**United States District Court**
For the Northern District of California

1
2
3
4
5

**NOT FOR CITATION**

6
7

UNITED STATES DISTRICT COURT

8

NORTHERN DISTRICT OF CALIFORNIA

9
10
11
12  eMAG SOLUTIONS LLC; et al.,

13         Plaintiffs,                          No. C 02-1611 PJH

14     v.                                       **ORDER GRANTING**
                                                **MOTION TO DISMISS**
15  TODA KOGYO CORPORATION,
    et al.,
16
           Defendants.
17  _____/

18        Defendants' motion to dismiss the claims of the foreign plaintiffs for failure to state a

19  claim and for lack of subject matter jurisdiction came on for hearing before this court on May

20  25, 2005.  Plaintiffs appeared by their counsel Eric B. Fastiff, Joseph R. Saveri, Kimberly S.

21  Keevers, and Joshua P. Davis.  Defendants Toda Kogyo Corporation and Toda America, Inc.

22  appeared by their counsel Thomas P. Hanrahan.  William M. Goodman appeared specially for

23  defendant Titan Kogyo Kabushiki Kaisha.  Defendant Sakai Trading New York, Inc. appeared

24  by its counsel Richard E. Donovan and Mia S. Blackler, who also appeared specially for

25  defendants Sakai Trading Co. Ltd., and Sakai Chemical Co. Ltd.[1]

26

27        _____

28        [1]  Defendants Ishihara Sangyo Kaisha, Ltd. ("ISK"); ISK Americas Incorporated ("ISKA");
          ISK Magnetics, Inc. ("ISKM"); and Ishihara Corporation (USA) ("ISK USA") – collectively, "the ISK
          defendants" – did not appear.  The parties previously advised the court that plaintiffs and the ISK
          defendants were in the process of settling.

1    Having read the parties' papers and considered the relevant legal authority, and good

2    cause appearing, the court hereby GRANTS the motion as follows.

3                                              **BACKGROUND**

4    This is an antitrust case, alleging violations of § 1 of the Sherman Antitrust Act, 15

5    U.S.C. § 1, and filed as a proposed class action seeking damages under §§ 4(a) and 16 of

6    the Clayton Act, 15 U.S.C. §§ 15 and 26.  Plaintiffs are eMag Solutions, LLC (a Delaware

7    limited liability company), and four "foreign plaintiffs" – eMag Solutions Limited ("eMag Wales"

8    – incorporated under the laws of England and Wales); Greencorp Magnetics Pty Ltd.

9    ("Greencorp" – incorporated under the laws of Australia); Delta Magnetics, S.A. de C.V.

10   ("Delta" – incorporated under the laws of Mexico); and Cintas VAC, S.A. de C.V. ("Cintas" –

11   incorporated under the laws of Mexico).  Plaintiffs allege that defendants engaged in a

12   worldwide conspiracy to set the prices of magnetic iron oxide ("MIO"), a substance used in

13   magnetic products such as audio and video tapes.

14   The action is brought as a proposed class action by four of the plaintiffs as

15   "representative plaintiffs," and by the fifth plaintiff individually.  The representative plaintiffs

16   claim to represent a class of persons and entities who purchased MIO from defendants in the

17   United States from 1991 to the present, and a class of United States persons or entities who

18   purchased MIO from defendants from 1991 to the present.  They allege that defendants fixed

19   the price of MIO throughout the world, including in the United States.

20   The ten defendants can be divided into four groups.  First is the ISK group, which

21   consists of Ishihara Sangyo Kaisha, Ltd. ("ISK" – a Japanese corporation); ISK Magnetics,

22   Inc. ("ISKM" – a Delaware corporation); ISK's wholly-owned subsidiary ISK Americas,

23   Incorporated ("ISKA" – a Delaware corporation); and ISKA's wholly-owned subsidiary,

24   Ishihara Corporation USA ("ISK USA" – a California corporation).

25   Second is the Sakai group, which consists of Sakai Chemical Industry Co., Ltd. ("Sakai

26   Chemical" – a Japanese corporation); Sakai Trading Co., Ltd. ("Sakai Trading" – a Japanese

27   corporation); Sakai Trading's subsidiary, Sakai Trading New York, Inc. ("Sakai NY" – a New

28   York corporation); and Sakai Chemical Industry Co., Ltd. ("Sakai Chemical" – place of

**United States District Court**

For the Northern District of California

1  incorporation not stated), the parent corporation of Sakai Trading (which in turn is the parent

2  corporation of Sakai NY).  Plaintiffs claim that Sakai Trading and Sakai NY are so controlled

3  by Sakai Chemical that each is the alter ego of Sakai Chemical.

4       Third is Titan Kogyo Kabushiki Kaisha ("Titan" – a Japanese corporation), which is

5  partially owned by Inabata & Co., Ltd. ("Inabata Japan") and Inabata American Corporation

6  ("Inabata America).  Although the Inabata entities are not named as defendants, plaintiffs

7  assert that each is so controlled by Titan that it is the alter ego of Titan.

8       Fourth is the Toda group, which consists of Toda Kogyo Corporation ("Toda Japan" –

9  a Japanese corporation"); and Toda American, Inc. ("Toda America" – an Illinois corporation).

10       The Toda defendants, the Sakai defendants, and Titan now seek an order dismissing

11  the claims asserted against them by the foreign plaintiffs in the Third Amended Complaint

12  ("TAC"), for failure to state a claim and for lack of subject matter jurisdiction.  Defendants also

13  contend that the foreign plaintiffs lack standing to assert antitrust claims because foreign harm

14  is not actionable under the antitrust laws, and argue that the TAC fails to adequately plead

15  antitrust injury.

16                 **DISCUSSION**

17  A.    Legal Standards

18       A court should dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to

19  state a claim only where it appears beyond doubt that plaintiff can prove no set of facts in

20  support of the claim which would entitle the plaintiff to relief.  See Conley v. Gibson, 355 U.S.

21  41, 45-46 (1957); Pillsbury, Madison & Sutro v. Lerner, 31 F.3d 924, 928 (9th Cir. 1994).

22  Review is limited to the contents of the complaint.  Allarcom Pay Television, Ltd. v. Gen.

23  Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995).  All allegations of material fact are taken

24  as true and construed in the light most favorable to the nonmoving party.  Smith v. Jackson, 84

25  F.3d 1213, 1217 (9th Cir. 1996).

26       The plaintiff bears the burden of demonstrating that subject matter jurisdiction exists

27  over this complaint when challenged under Fed. R. Civ. P. 12(b)(1).  See, e.g., Tosco Corp. v.

28  Communities for a Better Env't, 236 F.3d 495, 499 (9th Cir. 2001).  The defendant may either

United States District Court

For the Northern District of California

1  challenge jurisdiction on the face of the complaint or provide extrinsic evidence demonstrating

2  lack of jurisdiction on the facts of the case.  White v. Lee, 227 F.3d 1214, 1242 (9th Cir.

3  2000).  Here, since the defendants challenge jurisdiction on the face of the complaint, all

4  allegations of the complaint are taken as true and all disputed issues of fact are resolved in

5  favor of the non-moving party.  See Love v. United States, 915 F.2d 1242, 1245 (9th Cir.

6  1990).

7  B.      The Sherman Act and the FTAIA

8          Section 1 of the Sherman Antitrust Act provides, in part, that "[e]very contract,

9  combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce

10  among the several States, or with foreign nations, is declared to be illegal."  15 U.S.C. § 1.

11  The Foreign Trade Antitrust Improvements Act of 1982 ("FTAIA"), which is an amendment to

12  the Sherman Act, excludes from the Sherman Act's reach "much anticompetitive conduct that

13  causes only foreign injury."  Hoffman-LaRoche v. Empagran, 124 S.Ct. 2359, 2363 (2004).

14         The FTAIA sets forth a general rule that the Sherman Act "shall not apply to conduct

15  involving trade or commerce . . . with foreign nations," 15 U.S.C. § 6a, but creates exceptions

16  to that general rule for conduct that significantly harms imports, domestic commerce, or

17  American exporters.  This "domestic-injury exception" provides that the Sherman Act is

18  applicable to foreign commerce where the conduct has "a direct, substantial, and reasonably

19  foreseeable effect" (a) on trade or commerce which is not trade or commerce with foreign

20  nations, or on import trade or import commerce with foreign nations; or (b) on export trade or

21  export commerce with foreign nations, of a person engaged in such trade or commerce in the

22  United States, where that "direct, substantial, and reasonably foreseeable effect" also "gives

23  rise to a claim" under the Sherman Act.  15 U.S.C. § 6a; see also Empagran, 124 S.Ct. at

24  2366 (under limitations imposed by FTAIA, courts have jurisdiction over Sherman Act claim

25  brought by foreign plaintiff only when plaintiff alleges that defendant's conduct affected U.S.

26  commerce and that the effect gave rise to the plaintiff's injury).  In addition, if the Sherman Act

27  applies to the alleged anticompetitive conduct only because of the effect on "export commerce

28  with foreign nations, of a person engaged in such trade or commerce in the United States,"

United States District Court

For the Northern District of California

1   the Sherman Act applies to such conduct "only for injury to export business in the United

2   States." 15 U.S.C. § 6a.

3       In Empagran, the Court held that foreign purchasers who bought product from the

4   sellers for delivery outside of the United States could not bring a Sherman Act claim based on

5   the foreign effect of foreign anti-competitive conduct where the alleged domestic effect was

6   independent of the foreign effect giving rise to the plaintiffs' claims.  Empagran, 124 S.Ct. at

7   2363.  The Court stated that application of American antitrust laws to foreign anticompetitive

8   conduct is reasonable only where those laws "reflect a legislative effort to redress domestic

9   antitrust injury that foreign anticompetitive conduct has caused." Id. at 2366.  That is, where

10  the defendant's conduct affects both domestic and foreign commerce, and the plaintiff's injury

11  arises only from the effect on foreign commerce, the plaintiff's injury is independent from the

12  domestic effect and the court has no jurisdiction.  In addition, the Court ruled that the language

13  "gives rise to a claim" (the second part of the FTAIA test) means that the foreign conduct's

14  domestic effect must be sufficient to cause a cognizable injury to the plaintiff or plaintiffs.  Id. at

15  2371-72.

16  C.      Defendants' Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim

17      In the TAC, plaintiffs allege that defendants' conspiracy to fix prices resulted in the sale

18  of MIO at artificially high and non-competitive levels in four categories of commerce – U.S.

19  imports, purely domestic commerce, U.S. exports, and purely foreign commerce.  They allege

20  that ISKM sold MIO in purely domestic commerce and as U.S. exports, and that ISK, the Sakai

21  defendants, the Toda defendants, and Titan sold MIO in purely foreign commerce and as U.S.

22  imports.  Plaintiffs also assert that direct purchasers of MIO throughout the world were

23  deprived of the benefit of free and open competition in the purchase and pricing of MIO in

24  each of these four categories of commerce, and that plaintiffs and the members of the

25  proposed class paid more for MIO than they would have otherwise paid in the absence of

26  defendants' unlawful conduct.  Defendants argue that the action should be dismissed for lack

27  of subject matter jurisdiction and/or for failure to state a claim as to each of these four

28  categories of commerce.

**United States District Court**
For the Northern District of California

1

sales in "purely foreign" commerce

2      In the TAC, plaintiffs allege that eMag Wales and Greencorp (not Delta and Cintas)

3   were injured by their purchases of MIO in "purely foreign" commerce.  Plaintiffs claim that

4   eMag Wales purchased MIO manufactured and sold in Japan by Sakai companies and Toda

5   Japan, and delivered to eMag Wales in Wales.  They allege that Greencorp purchased MIO

6   manufactured and sold in Japan by Sakai companies and Toda Japan, and delivered to

7   Greencorp in Australia.

8      Defendants argue that plaintiffs' claims for recovery based on "purely foreign"

9   commerce are outside the scope of U.S. antitrust law, and must therefore be dismissed for

10  lack of subject matter jurisdiction.  Relying on Empagran, defendants contend that the FTAIA

11  generally excludes from the Sherman Act's reach all conduct that involves commerce with

12  foreign countries.  Id. at 2364.

13     Plaintiffs argue, however, that the FTAIA does not bar their claims of sales in "purely

14  foreign" commerce, and that they have adequately alleged that those sales had an effect on

15  U.S. commerce.  In the TAC, plaintiffs assert that the effect of defendants' conspiracy on

16  "purely foreign" commerce was dependent on its effect on "American commerce"[2] in three

17  ways:  First, they claim that they "bought MIO in American commerce," and so "would have

18  been particularly well-suited to replace purchases of MIO in purely foreign commerce with

19  purchases of MIO in American commerce, if the conspiracy had not affected the prices of MIO

20  in American commerce."  TAC ¶ 85(a).  Second, they assert that "defendants' conspiracy to

21  fix prices above competitive levels in American commerce was necessary for them to support

22  their conspiracy to fix prices in purely foreign commerce because competition from American

23  commerce would have put downward pressure on        sales internationally, including

24  through sales diverted to American commerce and through arbitrage by purchasers in

25  American commerce, and thus the defendants' conspiracy to fix prices in American

26  commerce caused . . . [plaintiffs] to pay artificially high prices for MIO they purchased in purely

27  _____

28      [2]  Plaintiffs define "American commerce" as meaning U.S. imports, "purely domestic"
commerce, and U.S. exports.

United States District Court

For the Northern District of California

1    foreign commerce." TAC ¶ 85(b). Third, they allege that they "used the MIO they bought from

2    the defendants in American and purely foreign commerce to manufacture magnetic tape and

3    other products that they in turn sold in substantial volume in American commerce at prices

4    inflated as a result of the defendants' conspiracy." TAC ¶ 85(c).

5         Defendants contend, however, that the foreign plaintiffs cannot recover based on their

6    foreign purchases for several reasons. They argue that the TAC does not adequately plead

7    that the alleged price fixing of MIO purchased by eMag Wales and Greencorp in "purely

8    foreign" commerce had a direct, substantial, and reasonably foreseeable effect on domestic

9    commerce, or that the alleged harm to the foreign plaintiffs arose from the effect in the United

10   States.

11        Defendants submit that rather than alleging that a foreign conspiracy had a direct,

12   substantial, and foreseeable domestic effect that caused their injury, the foreign plaintiffs

13   assert that they "pa[id] artificially high prices for MIO they purchased in Purely Foreign

14   Commerce" because they could not engage in "arbitrage" purchases in the U.S. market due to

15   inflated domestic prices for MIO. Defendants contend that not only do such circular

16   allegations not meet the "direct, substantial, and reasonably foreseeable" test because they

17   are entirely speculative and conclusory, but also that the claims in the TAC arise only from the

18   foreign plaintiffs' foreign purchases of MIO, and not from any effect on the foreign plaintiffs in

19   the United States, as required by the FTAIA.

20        Defendants also contend that policy considerations underlying the Sherman Act and

21   the government's deterrence of international cartels will be undermined by permitting plaintiffs'

22   foreign commerce claims to proceed. Defendants point to arguments made in an amicus

23   brief filed in the remanded Empagran case (in the D.C. Circuit) by the United States

24   Department of Justice ("DOJ") and the Federal Trade Commission ("FTC"), in which those

25   agencies argued that the FTAIA does not grant jurisdiction over claims of worldwide price-

26   fixing conspiracies in worldwide markets based on theories of arbitrage and "but-for"

27   causation without any specific domestic harm.

28        Just as in the present case, the foreign plaintiffs in Empagran had argued that

7

**United States District Court**
For the Northern District of California

1  defendants' "cartel" would have been unsustainable if the United States had been excluded

2  from it, because plaintiffs would have either purchased in the U.S. at lower prices or from

3  arbitrageurs selling product imported from the U.S.  The Empagran plaintiffs thus asserted

4  that their injuries would not have occurred "but for" the fact that the cartel included the United

5  States, and that the U.S. effect of the cartel "gave rise to" their claim as required by the FTAIA.

6  The DOJ and the FTC noted that the Supreme Court had rejected plaintiffs' argument that their

7  construction of the FTAIA would help deter cartels, in light of "important experience-backed

8  arguments (based on amnesty-seeking incentives)" raised by defendants, the United States,

9  and foreign governments.  The DOJ and the FTC argued that permitting cases such as the

10  plaintiffs to proceed would undermine the government's deterrence of cartels, because cartel

11  members who do not qualify for amnesty but might otherwise want to cooperate with the

12  government – i.e., through plea agreement – would be discouraged from doing so.

13        Plaintiffs contend, however, that Empagran does not bar all foreign buyers from

14  bringing claims under U.S. antitrust law for purchases in "purely foreign" commerce, arguing

15  that the Court ruled that purchasers in foreign commerce may bring claims under U.S. antitrust

16  law if their injuries would not have occurred "but for" the domestic effects of anticompetitive

17  conduct (citing Empagran, 124 S.Ct. at 2372).  They claim in addition that case law allows

18  "purely foreign" commerce claims if the effects in the U.S. are the "but-for" cause of the

19  plaintiff's foreign injuries (citing Sniado v. Bank Austria AG, 378 F.3d 210, 213 (2d Cir. 2004);

20  MM Global Servs., Inc. v. Dow Chem. Co., 329 F.Supp. 2d 337, 342-43 (D.Conn. 2004)).

21        Thus, with regard to the present case, plaintiffs argue that the foreign defendants'

22  international conspiracy had an adverse effect in the United States, and that this effect was a

23  "but-for" cause of plaintiffs' injuries; and they also assert that the domestic effects of

24  defendants' conspiracy were the "but-for" cause of their injuries abroad.  They contend that if

25  defendants' conspiracy had not inflated U.S. prices, the foreign plaintiffs would not have been

26  injured because lower American prices would have driven down international prices overall,

27  including through arbitrage; and the domestic effects of the conspiracy caused their injuries

28  because they had already bought some MIO in American commerce and could have

United States District Court

For the Northern District of California

1   purchased the rest of their MIO from the U.S. market had it remained competitive.

2       The provision in the FTAIA that limits the Sherman Act's application to conduct with a

3   "direct, substantial, and reasonably foreseeable effect" on domestic commerce addresses the

4   court's subject matter jurisdiction over antitrust claims and is not merely an element of the

5   claims. U.S. v. LSL Biotechnologies, 379 F.3d 672, 679-80 (9th Cir. 2004). Accordingly, the

6   court must consider whether plaintiffs have met their burden of showing that the court has

7   jurisdiction over their claims of anticompetitive conduct in "purely foreign" commerce. The

8   court finds that plaintiffs' theory of "but-for" causation – that plaintiffs would have paid lower

9   foreign prices "but for" inflated domestic prices – is not sufficient to support a claim under the

10  Sherman Act and is inconsistent with the "gives rise to a claim" language of the FTAIA.[3]

11      The court disagrees with plaintiffs' characterization of Empagran as setting forth a "but-

12  for" standard of causation for claims alleging antitrust conduct in purely foreign commerce. In

13  Empagran, which involved an alleged scheme to fix the price of vitamins, the respondents

14  (foreign plaintiffs) argued that because vitamins are fungible and readily transportable, the

15  sellers could not have maintained their international price-fixing arrangement and respondents

16  would not have suffered their foreign injury if there had not been an adverse domestic effect

17  (i.e., higher prices in the United States), and that this "but-for" condition was sufficient to bring

18  the price-fixing conduct within the scope of the FTAIA's exception. Empagran, 124 S.Ct. at

19  2372.

20      However, the Supreme Court specifically declined to address this argument, stating,

21  "We have assumed that the anticompetitive conduct here independently caused foreign injury,"

22  and noting that the question of the standard to be applied where the alleged foreign injury was

23  not independent had not been addressed by the court of appeals below. The Court added

24  that the respondents remained "free to ask the Court of Appeals to consider the claim." Id. at

25  

26      [3] In addition, the TAC does not seek class-wide damages arising from "purely foreign"
    commerce, as the definition of the proposed class includes only (a) "all persons" or other "entities"

27  who purchased MIO in American commerce, and (b) "all United States persons" or other "entities"
    who purchased MIO in American or in purely foreign commerce. TAC ¶ 72. In other words,

28  plaintiffs do not seek to represent foreign plaintiffs who bought in purely foreign commerce.

United States District Court

For the Northern District of California

1    2372.  The Court did not set forth a standard for such claims – it merely commented that the

2    respondents had raised the argument.

3          Thus, plaintiffs in the present case are advocating a skewed reading of Empagran.

4    Contrary to plaintiffs' argument, the Supreme Court did not conclude that foreign purchasers

5    could pursue claims in the United States if their injuries abroad would not have occurred "but

6    for" the domestic effect of the alleged conduct.  Moreover, apart from what is stated above, the

7    Court did not make any ruling about what was required for foreign purchasers in foreign

8    commerce to bring a claim under the Sherman Act.

9          In addition, the D.C. Circuit noted on remand that the Supreme Court had "declined to

10   decide whether this 'but for' condition is sufficient to bring the contested price-fixing conduct

11   within the scope of the FTAIA's exception," and had remanded the case for further

12   proceedings on the issue.  Empagran S.A. v. F. Hoffman-LaRoche, LTD, 388 F.3d 337, 339

13   (D.C. Cir. 2004).  The D.C. Circuit indicated that it would order full merits briefing on the

14   question whether the nature of the alleged link between foreign injury and domestic effects

15   was legally sufficient to trigger application of the FTAIA's domestic-injury exception.  Id. at

16   339, 342-46.

17         Subsequently, the D.C. Circuit ruled that the court lacked jurisdiction under the FTAIA.

18   Among other things, the court held that "but-for" causation between the domestic effects and

19   the claim of foreign injury was not sufficient to bring the anti-competitive conduct at issue within

20   the FTAIA exception.  Empagran v. F. Hoffman-Laroche, ___ F.3d ___ , 2005 WL 1512951 at *3

21   (D.C. Cir., June 28, 2005).  The court emphasized that the language of the FTAIA exception –

22   "gives rise to" – indicates "a direct causal relationship, that is, proximate causation, and is not

23   satisfied by the mere but-for 'nexus'" advanced by the plaintiffs-appellants.  Id.

24         This court also disagrees that plaintiffs' position in the present case is supported by

25   Sniado and MM Global Services.  It is true that the court in Sniado noted that the plaintiff's

26   complaint had not even alleged that "but for the European conspiracy's effect on United States

27   commerce, he would not have been injured in Europe."  Nevertheless, the Second Circuit

28   nowhere adopted "but-for" causation as the appropriate standard for antitrust claims involving

"purely foreign" commerce.  Indeed, the Second Circuit refused to "infer from the general

allegations in [plaintiff's] amended complaint that the 'domestic component' of the alleged

worldwide conspiracy was 'necessary . . . for the conspiracy's overall success.'" Sniado, 378

F.3d at 213.

Nor does MM Global Services support plaintiffs' position.  In that case, an Indian

corporation, Mega Visa, was the distributor for products manufactured by American

corporations Union Carbide and Dow Chemical.  Mega Visa and its affiliates purchased

these products in the United States and resold them in India.  The plaintiffs – Mega Visa and

its affiliates – alleged that Dow and Union Carbide and their affiliates had compelled plaintiffs

to agree to a price maintenance conspiracy.  The defendants moved to dismiss, arguing that

the court was without jurisdiction to hear the claim under the FTAIA, because the complaint

failed to allege antitrust conduct having a direct, substantial, and reasonably foreseeable

effect on U.S. commerce.  The court found that the complaint did allege that the defendants'

misconduct gave rise to antitrust effects in the U.S. that injured the plaintiffs – quoting the

allegation in the complaint that as a result of defendants' price-fixing,

> competition in the sale and resale of [p]roducts in and from the United States
> was improperly diminished and restrained, and as a result of such effect on
> competition, [the] [p]laintiffs were injured by being precluded from effectively and
> fully competing and maximizing their sales of [p]roducts.

M.M Global, 329 F.Supp. 2d at 342.

The district court in MM Global court never discussed whether "but-for" causation is the

appropriate standard for foreign claims under the FTAIA.  Moreover, the case did not concern

"purely foreign" commerce – the plaintiffs had purchased product in the U.S., which led the

court to conclude that the complaint properly alleged that defendants' conduct had an effect on

competition in and from the United States, and that plaintiffs were injured as a result of that

effect.

Here, plaintiffs seek relief for overcharges in "purely foreign" commerce, but this claim

does not arise from a "direct, substantial, and foreseeable effect" on United States commerce

(as required by the FTAIA).  The FTAIA does leave room for the possibility that foreign

11

United States District Court

For the Northern District of California

1  anticompetitive conduct can be subject to the jurisdiction of the U.S. courts.  However, the

2  FTAIA contemplates that occurring only subject to two conditions – the foreign conduct must

3  have a "direct, substantial, and reasonably foreseeable effect" on U.S. commerce, and the

4  plaintiff's claim must arise from the effect on U.S. commerce.

5         Indeed, as defendants argue, plaintiffs' proposed theory – pleading a global

6  marketplace where inflated prices in the United States facilitated inflated prices abroad –

7  would effectively nullify the Supreme Court's ruling in Empagran, because it would allow any

8  foreign plaintiff who suffered harm abroad as a result of a foreign conspiracy to gain access to

9  the U.S. courts and treble damages by making unsupported allegations of a global

10 marketplace with the possibility of arbitrage pricing, even where there are no allegations of a

11 direct impact on U.S. commerce.  This result would run counter to the Empagran principle that

12 U.S. courts should avoid unreasonable interference with the sovereign authority of other

13 nations, see Empagran, 124 S.Ct. at 2366, and would require district courts to engage in

14 complex, fact-determinations of alleged linkages between foreign and domestic injuries

15 despite the Court's admonition that FTAIA's jurisdictional test should be capable of being

16 applied "simply and expeditiously," see id. at 2369.

17        In short, the foreign plaintiffs' claims of antitrust injury in "purely foreign" commerce must

18 be dismissed because plaintiffs are unable to allege that their injury was directly linked to acts

19 that caused injury to U.S. commerce.

20               U.S. imports, U.S. exports, and sales in "purely domestic" commerce

21        In addition to alleging the sales in "purely foreign" commerce, plaintiffs claim that the

22 alleged price-fixing conspiracy resulted in the sale of MIO at artificially high levels in three

23 other categories of commerce – U.S. imports, "purely domestic" commerce, and U.S. exports.

24 Defendants contend that the TAC fails to state a claim under the Sherman Act in any of these

25 categories of commerce.

26                                    U.S. imports

27        With regard to U.S. imports, eMag USA (a U.S. plaintiff – not a subject of this motion to

28 dismiss the foreign plaintiffs' claims) alleges that it bought MIO manufactured in Japan, from

United States District Court

For the Northern District of California

1  Toda Kogyo and Sakai Trading in the United States; and Delta and Cintas allege that they

2  bought MIO manufactured in Japan, from ISKM in the United States.  By its terms, the FTAIA

3  does not apply to cases alleging antitrust conduct in foreign import commerce.  See 15 U.S.C.

4  § 6a.  Thus, the rule articulated by the U.S. Supreme Court in Hartford Fire Ins. Co. v.

5  California, 509 U.S. 764 (1993) applies – that is, "the Sherman Act applies to foreign conduct

6  that was meant to produce and did in fact produce some substantial effect" in the United

7  States."  Id. at 796.

8          Here, defendants argue that the purchases by Delta and Cintas do not constitute U.S.

9  imports because these foreign plaintiffs are not themselves importers into the U.S.[4]  Plaintiffs

10  contend, however, that the MIO that defendants delivered to the foreign plaintiffs in the U.S.

11  does qualify as U.S. import commerce.  Defendants respond that plaintiffs have confused a

12  claim premised on injury to the import trade between the United States and foreign nations

13  with injury to persons who bought goods after they were imported into the U.S.  Defendants

14  also argue that the purchases by Delta and Cintas cannot be considered U.S. imports

15  because the MIO simply passed through the United States en route to final destinations

16  outside the borders of the United States.

17          The court finds that the motion must be GRANTED as to the claims of antitrust injury in

18  American import commerce, because plaintiffs have not alleged that Delta and Cintas

19  engaged in "import commerce" that produced some substantial effect in the United States.

20  Moreover, as defendants note, the flow of commerce is not interrupted simply by an

21  intermediate drop in the United States before shipping continues to a foreign destination.

22                              "purely domestic" commerce

23          With regard to "purely domestic" commerce, plaintiffs allege that eMag U.S., eMag

24  Wales, Delta, and Cintas all bought MIO manufactured in the United States from ISKM, in the

25  United States and abroad.

26

27  _____

28          [4]  The MIO was imported from Japan into the United States by ISKM.  Delta took
possession of the shipment in Texas, and Cintas took possession in California.  In both cases,
Mexico was the ultimate destination of the MIO.

United States District Court

For the Northern District of California

1    Defendants argue that the purchases by eMag Wales, Delta, and Cintas do not

2    constitute "purely domestic" commerce because the "ultimate" destination of the MIO sold to

3    each of these plaintiffs was outside the United States.  Defendants note that each of the

4    foreign plaintiffs is incorporated and has its principal place of business outside the United

5    States.  Defendants claim that the act of taking control of the MIO within the United States  for

6    ultimate delivery and use outside the United States does not give rise to a claim for violation

7    of the Sherman Act, because the flow of commerce ends when goods reach their ultimate

8    destination.

9    As with the argument regarding "import commerce," plaintiffs respond that the MIO that

10   defendants delivered to the foreign plaintiffs in the United States qualifies as U.S. "purely

11   domestic" commerce.  Plaintiffs contrast the facts in the present case with the facts in

12   Empagran, where the Court observed that the foreign purchasers had bought vitamins for

13   delivery outside of the United States, and there was no claim that the plaintiffs had bought any

14   vitamins in the United States or in transactions in U.S. commerce.  Empagran, 124 S.Ct. at

15   2263-64.  Plaintiffs contend that the Court's reasoning reflects that it is possible for foreign

16   purchasers to buy a product in the United States or in transactions in U.S. commerce.

17   Plaintiffs also argue that the Court never suggested that the final destination of a

18   product, rather than the location of delivery, dictates the kind of commerce at issue.  They cite

19   the legislative history, noting that the House Report stated that the FTAIA "preserves antitrust

20   protections in the domestic marketplace for all purchasers, regardless of nationality or the

21   situs of the business."  H.R. Rep. No. 97-686, at 10 (1982) ("House Report").  They argue that

22   a foreign purchaser who buys in the United States is participating in the domestic

23   marketplace, even if the foreign purchaser then transports those goods abroad.

24   The court finds that the motion must be GRANTED as to the claims of antitrust injury in

25   "purely domestic" commerce because plaintiffs have not alleged facts showing that the

26   purchases by eMag Wales, Delta, and Cintas constituted "purely domestic" commerce.  The

27   court agrees with defendants that the flow of commerce is not interrupted simply by an

28   intermediate drop in the U.S. before shipping continues to a foreign destination.  The portion

United States District Court

For the Northern District of California

of the House Report cited by plaintiffs says nothing more than that foreign entities are not excluded from the protection of the U.S. law simply because they operate overseas – it does not purport to define what is or is not within the flow of domestic commerce.  Empagran did not address this issue, as the Court merely stated that the case involved foreign companies' purchases that were delivered outside of the U.S.  It never addressed – because it was not at issue – whether transient receipt of product in the U.S. for ultimate delivery and use outside the U.S. constitutes "purely domestic" commerce.

U.S. export commerce

With regard to U.S. exports, plaintiffs allege that eMag Wales and Greencorp bought MIO manufactured in the United States, from ISKM, in the United States and abroad.

Defendants argue that eMag Wales and Greencorp, as purchasers of U.S. exports, cannot recover because they are not export competitors of an American exporter.  Plaintiffs allege violations of the Sherman Act in connection with MIO that was manufactured and sold in the United States by ISKM, and was exported to eMag Wales in Wales and Greencorp in Australia.  Defendants assert that the FTAIA expressly protects from the reach of the Sherman Act any anticompetitive activities of U.S. exporters, except if the plaintiff is "an American export competitor" injured by such activity.  See 15 U.S.C. § 6a (requirement that the anticompetitive conduct have "a direct, substantial, and reasonably foreseeable effect" on "export trade . . . of a person engaged in such trade . . . in the United States").

Plaintiffs argue, however, that the FTAIA codified the longstanding "effects" test, under which it is the location of the effect of conduct, not the location of the conduct itself, which determines the applicability of U.S. antitrust law (citing House Report at 5-6).  They claim that one of the primary aims of the FTAIA was to provide U.S. exporters a special exemption from the "effects" test – in other words, to exempt U.S. exporters from claims by foreign purchasers except in the limited circumstance where the U.S. exporter's conduct adversely affects U.S. imports or purely domestic commerce.  They assert, conversely, where the U.S. exporter's conduct does affect U.S. imports or "purely domestic" commerce, then the foreign purchaser can sue for conduct that is not solely export-related.

United States District Court

For the Northern District of California

1     Plaintiffs contend that the TAC supports their claims for purchases of U.S. exports,

2  because it alleges sufficient effects on American commerce (citing TAC ¶¶ 15-17, 19, 29, 30,

3  34, 35, 51, 59, 63, 68, and 84).[5]  Plaintiffs also assert that the TAC alleges that ISKM

4  manufactured millions of dollars' worth of MIO in the U.S., which it sold in purely domestic

5  commerce; that ISK Japan pleaded guilty to price-fixing; that defendants' conspiracy had the

6  requisite direct, substantial, and reasonably foreseeable effects on U.S. exports, U.S. imports,

7  and purely domestic commerce; that defendants' conspiracy had a "spillover effect," inflating

8  the price of U.S. imports and purely domestic commerce; and that eMag USA bought over

9  $500,000 worth of MIO as U.S. imports subject to defendants' conspiracy (citing TAC ¶¶ 52,

10  98, 84, 86, and 15-17).

11     The court finds that the motion must be GRANTED as to the claims of antitrust injury in

12  export commerce, as plaintiffs have not adequately alleged a direct, substantial, and

13  reasonably foreseeable effect on U.S. commerce caused by these export sales, because they

14  do not allege that the foreign plaintiffs are American export competitors.

15  D.     Motion to Dismiss for Lack of Antitrust Standing

16     Defendants argue that the foreign plaintiffs lack standing to assert antitrust claims.

17  Antitrust standing is an issue separate from the jurisdictional question discussed above.

18  Unlike Article III standing, antitrust standing is not jurisdictional.  Datagate, Inc. v.

19  Hewlett-Packard Co., 60 F.3d 1421, 1425, n. 1 (9th Cir.1995).  In Assoc. Gen'l Contractors v.

20  Cal. State Council of Carpenters, 459 U.S. 519 (1983), the Supreme Court set forth the

21  factors a court must consider in determining whether a plaintiff has standing to bring a claim

22

23        [5]  Those paragraphs of the TAC do not appear to support plaintiffs' argument with regard
24  to U.S. export commerce.  TAC ¶¶ 15 and 16 allege that eMag USA purchased MIO as U.S.
    imports.  TAC ¶ 17 alleges that eMag USA purchased MIO in purely domestic commerce.  TAC
25  ¶ 19 alleges that eMag Wales purchased MIO in purely domestic commerce.  TAC ¶29 alleges
    that Delta purchased MIO directly as U.S imports.  TAC ¶ 30 alleges that Delta purchased MIO
26  in purely domestic commerce.  TAC ¶ 34 alleges that Cintas purchased MIO directly as U.S.
    imports.  TAC ¶ 35 alleges that Cintas purchased MIO directly in purely domestic commerce.
27  TAC ¶ 51alleges that ISK sold MIO as U.S. imports.  TAC ¶ 59 alleges that Sakai sold MIO as
    U.S. imports.  TAC ¶ 63 alleges that Titan sold MIO as U.S. imports.  TAC ¶68 alleges that Toda
28  sold MIO as U.S. imports.  TAC ¶ 84 alleges that all the activities of the defendants alleged in the
    TAC had a direct, substantial, and foreseeable effect on all four categories of commerce.

**United States District Court**
For the Northern District of California

1  for violation of the antitrust laws.  These are (1) whether there is a causal connection between

2  the alleged antitrust violation and the harm plaintiff allegedly suffered, and whether defendants

3  intended to cause that harm; (2) whether the nature of plaintiff's injury is the type the antitrust

4  laws were intended to forestall; (3) the directness of the injury; (4) the existence of more direct

5  victims; (5) the risk of duplicative recovery; and (6) the complexity of apportioning damages.

6  Id. at 538-47.

7        Defendants focus on one of the these five factors, arguing that the allegations in the

8  TAC fail to establish that the foreign plaintiffs have suffered "antitrust injury" – i.e., the type of

9  injury that "the antitrust laws were intended to prevent and that flows from that which makes

10  defendants' acts unlawful."  Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489

11  (1977).  Because "antitrust laws were enacted for 'the protection of competition, not

12  competitors,' " a private antitrust claim must allege an injury that results from the

13  anticompetitive aspect of the defendants' conduct.  Legal Econ. Evaluations, Inc. v.

14  Metropolitan Life Ins. Co., 39 F.3d 951, 954 (9th Cir.1994) (citation and quotation omitted).

15        Defendants contend that even if U.S. courts have jurisdiction to hear the claims of the

16  foreign plaintiffs, the U.S. antitrust laws intended to protect such foreign plaintiffs, and the

17  foreign plaintiffs do not have antitrust standing under the FTAIA.  Defendants argue that

18  foreign consumers who have not participated in the U.S. market as  consumers or competitors

19  have no right to bring a Sherman Act claim.  Defendants also contend that each plaintiff has

20  failed to adequately allege an antitrust injury – that is, an injury that reflects the anticompetitive

21  effect either of the alleged violation or of anticompetitive acts made possible by the violation.

22        Plaintiffs contend that antitrust standing doctrine does not apply to parties, like the

23  foreign plaintiffs here, who are consumers in the relevant market, who bought the goods at

24  issue directly from the defendants, whose injuries are clear, and who are entitled to recover

25  the full amount they were overcharged.  They claim that it applies only to parties who are not

26  consumers or competitors or consumers in the market at issue, who suffer only an indirect

27  injury, whose injury is speculative, or whose claims might give rise to duplicative recoveries or

28  difficulties in apportioning damages.

1    The court finds that in view of the disposition of the Sherman Act claim, above, there is

2    no need for consideration of defendants' alternative claim that plaintiffs lack antitrust standing.

3    See Verizon Communications, Inc. v. Law Offices of Curtis v. Trinko LLP, 540 U.S. 398, 416

4    n.5 (2004).

5                                    **CONCLUSION**

6    In accordance with the foregoing, the court finds that defendants' motion must be

7    GRANTED and that the claims of the foreign plaintiffs must be DISMISSED.  Because the

8    court finds that amendment would be futile, the dismissal is WITH PREJUDICE.

9

10    **IT IS SO ORDERED.**

11    Dated: July 20, 2005

12                                    _____
                                     PHYLLIS J. HAMILTON
13                                   United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California