UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

eMAG SOLUTIONS, LLC., et al.,

    Plaintiffs,

    v.

TODA KOGYO CORPORATION, et al.,

    Defendants.
_____/

No. C 02-1611 PJH

**ORDER DENYING MOTION TO DISMISS**

Before the court is defendants' motion to dismiss the third amended complaint. Having read the parties' papers and carefully considered their arguments, and good cause appearing, the court hereby DENIES the motion.

**BACKGROUND**

This is an action alleging a world-wide conspiracy to fix the price of magnetic iron oxide ("MIO"), in violation of § 1 of the Sherman Antitrust Act, 15 U.S.C. § 1. Defendants Toda Kogyo Corporation and Toda America, Inc.[1] seek an order dismissing the claims of the sole remaining plaintiff, eMag Solutions LLC ("eMag USA"), alleged in the third amended complaint ("TAC"). Defendants argue that the claims alleged by eMag USA must be dismissed because plaintiff fails to allege antitrust injury.

The court dismissed the second amended complaint on January 10, 2005, for failure

---

[1] Defendant Titan Kogyo Kabushiki Kaisha asserts lack of personal jurisdiction and does not join the present motion to dismiss. The plaintiffs have settled their claims against ISK Magnetics, Inc.; ISKA; Ishihara Corporation (USA); Ishihara Sangyo Kaisha, Ltd.; Sakai Trading New York, Inc.; Sakai Chemical Co. Ltd.; and Sakai Trading Co. Ltd.

to state a claim. The five original plaintiffs filed the TAC on March 11, 2005, asserting antitrust claims in connection with sales of MIO as U.S. imports, as "purely domestic" commerce, as U.S. exports, and as "purely foreign" commerce. On July 20, 2005, the court dismissed the claims of the foreign plaintiffs, for lack of subject matter jurisdiction under the Foreign Trade Antitrust Improvements Act of 1982 ("FTAIA"), 15 U.S.C. § 6a.

The court found that the foreign plaintiffs could not maintain claims based on "purely foreign" commerce because they were unable to allege that their injury was directly linked to acts that caused injury to U.S. commerce; could not maintain claims based on U.S. "import commerce" because they did not allege that they had engaged in import commerce that produced some substantial effect on the United States; could not maintain claims based on "purely domestic" commerce because they did not allege facts showing that they had made purchases in the U.S. in "purely domestic" commerce; and could not maintain claims based on U.S. "export commerce" because none of them competed in export commerce. The dismissal of the claims of the foreign plaintiffs left eMag USA as the sole plaintiff in the case.

Because eMag USA did not file a fourth amended complaint, the present motion is directed toward the claims asserted by eMag USA in the TAC. The TAC alleges that eMag USA is a Delaware corporation with its principal place of business in Georgia; that eMag USA bought MIO that had been manufactured in Japan and imported by Toda Kogyo Corporation USA ("Toda Kogyo USA") and Sakai Trading New York, Inc. ("Sakai New York") ("import commerce"),[2] and bought MIO manufactured and sold in the U.S. by ISK Magnetics, Inc. ("ISKM") ("domestic commerce"); and that the price of the MIO was artificially inflated as the result of an agreement to fix prices and allocate markets "throughout the world."

---

[2] Defendants assert that the claims of "import commerce" are out of the case, as a result of the July 20, 2005, order dismissing the claims of the foreign plaintiffs. However, even though eMag USA is not the importer here – the imported MIO was manufactured in Japan by Japanese affiliates of Toda Kogyo and Sakai Trading, and then imported into the U.S., where eMag USA purchased it – eMag USA has nonetheless alleged the requisite effect on domestic commerce, which the court found lacking with regard to the foreign plaintiffs.

2

**DISCUSSION**

A.   Legal Standard

A court should dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim only where it appears beyond doubt that plaintiff can prove no set of facts in support of the claim which would entitle the plaintiff to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Pillsbury, Madison & Sutro v. Lerner, 31 F.3d 924, 928 (9th Cir. 1994). Motions to dismiss for failure to state a claim are disfavored, Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997), and 12(b)(6) dismissals are proper only in "extraordinary" cases. United States v. City of Redwood City, 640 F.2d 963, 966 (9th Cir. 1981).

Review is limited to the contents of the complaint. Allarcom Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Smith v. Jackson, 84 F.3d 1213, 1217 (9th Cir. 1996). In dismissing for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleadings was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995) (citations omitted).

B.   Section 1 of the Sherman Antitrust Act

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form or trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States." 15 U.S.C. § 1. The Supreme Court has not interpreted this language literally, however. See Nat'l Soc'y of Prof'l Engineers v. United States, 435 U.S. 679, 687 (1978) (section 1 of Sherman Act "cannot mean what it says"). Instead, the Court has concluded that the Sherman Act prohibits only "unreasonable" restraints of trade. State Oil Co. v. Khan, 522 U.S. 3, 10 (1997).

To state a claim for violation of § 1 of the Sherman Act, a plaintiff must plead facts, which, if true, would establish (1) that the defendants entered into a contract, combination, or conspiracy; (2) that this agreement unreasonably restrained trade under either a per se

3

rule of illegality or a "rule of reason" analysis; and (3) that the restraint affected interstate commerce.  Tanaka v. University of So. Cal., 252 F.3d 1059, 1062 (9th Cir. 2001);  Bhan v. NME Hospitals, Inc., 929 F.2d 1404, 1410 (9th Cir. 1991).  Although the notice-pleading standard of Federal Rule of Civil Procedure 8(a) applies in antitrust cases, see Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168-69 (1993); Walker Distrib. Co. v. Lucky Lager Brewing Co., 323 F.2d 1, 3 (9th Cir. 1963), plaintiffs must nonetheless allege sufficient facts to support the elements of a § 1 violation in order to survive a motion to dismiss.  See McClinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988).

The Supreme Court presumptively applies a "rule of reason" analysis to § 1 claims, under which plaintiffs must demonstrate that a particular contract or combination is in fact unreasonable and anticompetitive before it will be found unlawful.  Texaco, Inc. v. Dagher, 126 S.Ct. 1276, 1279 (2006).  In a "rule of reason" case, "the factfinder weighs all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition."  Business Elecs. Corp. v. Sharp Elecs. Corp., 485 U.S. 717, 723 (1988) (citation and quotation omitted).  The "rule of reason" is applied "where the economic impact of the challenged practice is not obvious."  Harkins Amusement Enters., Inc. v. Gen. Cinema Corp., 850 F.2d 477, 486 (9th Cir. 1988) (citation and quotation omitted), cited in Jack Russell Terrier Network v. Am. Kennel Club, Inc., 407 F.3d 1027, 1033 n.13 (9th Cir. 2005).

To state a claim in a "rule of reason" case, the plaintiff must allege not only the elements of a § 1 claim, indicated above, but must also assert facts showing an actual injury to competition, beyond the impact on the claimant, within a field of commerce in which the claimant is engaged.  See McGlinchy, 845 F.2d at 811 (9th Cir. 1988); see also Metro Indus., Inc. v. Sammi Corp., 82 F.3d 839, 847-48 (9th Cir. 1996).  To show an injury to competition, the plaintiff must either "'delineate a relevant market and show that the defendant plays enough of a role in that market to impair competition significantly,'" or show that the restraint has "'actually produced significant anti-competitive effects, such as a

4

reduction in output.'" Metro Indus., 82 F.3d 847-48 (citations omitted).  If, however, the injury flows from aspects of the defendant's conduct that are beneficial or neutral to competition, there is no antitrust injury, even if the defendant's conduct is illegal per se. Glen Holly Entm't, Inc. v. Tektronix, Inc., 343 F.3d 1000, 1008 (9th Cir. 2003).

Alternatively, activity that is alleged to have been in violation of § 1 may be subject to a per se standard.  Certain categories of agreements have been held to be per se illegal, dispensing with the need for case-by-case evaluation.  Business Elecs. Corp., 485 U.S. at 723.  "Such agreements are those that always or almost always tend to restrict competition and decrease output." United States v. Brown, 936 F.2d 1042, 1045 (9th Cir. 1991) (quotations and citations omitted).  Per se liability is reserved for those agreements that are so plainly anticompetitve that no elaborate study of the industry is needed to establish their illegality.  Texaco, 126 S.Ct. at 1279.  Once this type of restraint is demonstrated, no further showing of actual harm to competition is required.  Bhan, 929 F.2d at 1410.  Price-fixing agreements between two or more competitors – known as horizontal price-fixing agreements – fall into the category of arrangements that are "per se" unlawful.  Texaco, 126 S.Ct. at 1279; see also Catalano, Inc. v. Target Sales, Inc., 446 U.S. 643, 647 (1980).

C.   Section 4 of the Clayton Act

Section 4 of the Clayton Act, under which eMag USA seeks treble damages for the alleged Sherman Act violation, authorizes "any person . . . injured in his business or property by reason of anything forbidden in the antitrust laws" to bring suit under the antitrust laws and to recover triple damages.  15 U.S.C. § 15.  Only those who meet the requirements of "antitrust standing" may pursue a claim under the Clayton Act.[3]  Glen Holly, 343 F.3d at 1007.  The Supreme Court has interpreted 15 U.S.C. § 15 to mean that plaintiffs must prove antitrust injury, which is to say "injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts

---

[3] Unlike Article III standing, "antitrust standing" is not jurisdictional.  Datagate, Inc. v. Hewlett-Packard Co., 60 F.3d 1421, 1425 n.1 (9th Cir. 1995).  Rather, it is an element of the claim.

5

unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977); see also Glen Holly, 343 F.3d at 1000 (to acquire "antitrust standing," a plaintiff must adequately allege and eventually prove "antitrust injury").

Thus, antitrust injury is made up of four elements: 1) unlawful conduct, 2) causing an injury to the plaintiff, 3) that flows from that which makes the conduct unlawful, and 4) that is of the type the antitrust laws were intended to prevent. Glen Holly, 343 F.3d at 1000. In addition, the injured party must be a participant in the same market as the alleged malefactors. That is, the party alleging the injury must be either a consumer of the alleged violator's goods or services, or must be a competitor of the alleged violator in the restrained market. Id.

D.  Defendants' Motion

Defendants argue that the allegations in the TAC that a foreign conspiracy fixed the prices of goods that eMag USA bought in domestic commerce, and the prices of goods that were imported to the U.S. and then sold to eMag USA, are insufficient to state a claim because eMag USA fails to plead a cognizable antitrust injury in a properly-defined market (an element of an antitrust claim where the case is subject to the "rule of reason" analysis). eMag USA opposes the motion, asserting that it is not required to allege facts showing the relevant market and defendants' role in that market because this is a not a "rule of reason" case, and that in any event, the TAC adequately alleges antitrust injury.

As noted above, a horizontal price fixing arrangement – an agreement between competitors providing similar products "for the purpose and with the effect of raising, depressing, fixing, pegging, or stabilizing the price of a commodity" in interstate commerce," United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 223 (1940) – is a classic per se antitrust violation. Texaco, 126 S.Ct. at 1279. In the present case, eMag USA alleges that defendants entered into a conspiracy to fix the price of MIO and to allocate customers and market share for MIO in the United States. Even defendants

6

concede that this allegation would plead a per se violation if the alleged anticompetitive conduct occurred in the United States.

Defendants argue, however, that under Metro Industries, the application of the per se rule is not appropriate in the present case because "the conduct in question" occurred in another country. See Metro Indus., 82 F.3d at 844-45 (application of per se not appropriate where conduct in question occurred in another country because while Sherman Act may reach conduct outside our borders, it is "only when the conduct has an effect on American commerce").[4]

Defendants assert that because the allegations in the TAC relating to the alleged conspiracy to fix prices and allocate customers reflect meetings and conversations that occurred only outside of the United States, the application of the per se rule is not appropriate. They contend that because the conspiracy was a foreign one, the court must apply the "rule of reason" analysis and examine whether eMag USA has pleaded facts showing intended and substantial effects in the United States – an inquiry that must be conducted through a market analysis.

Defendants assert further that under Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n, 884 F.2d 504 (9th Cir. 1989), a plaintiff is required to plead the elements of the antitrust violation with supporting factual detail. See id. at 507-08. In addition, they claim, citing Metro Industries, that a claimant proceeding in a case governed by the "rule of reason" must prove the relevant market and show that the defendant plays enough of a role in that market to impair competition significantly. They argue that the TAC must be dismissed because eMag USA has not alleged injury to competition with sufficient detail.

In opposition, eMag USA contends that this case alleges a per se violation, and is therefore not subject to the "rule of reason" analysis. eMag USA asserts that the court has disposed of the foreign plaintiffs' claims of antitrust violations in connection with "purely

---

[4] This general principle also must be considered in light of the requirement of the FTAIA, which provides that the Sherman Act "shall not apply to conduct involving trade or commerce . . . with foreign nations," unless that conduct has a "direct, substantial, and reasonably foreseeable effect" effect on domestic commerce. 15 U.S.C. § 6a.

7

foreign" and U.S. export commerce, and that the remaining claims involve a conspiracy to fix prices in the United States. Thus, they claim, the "rule of reason" analysis does not apply. They contend that simple notice pleading is all that is required of a plaintiff alleging violations of antitrust law. They claim that they have adequately alleged the elements of a per se violation of the antitrust laws – that there was an agreement among the defendants to intentionally harm competition in a field of commerce in which the eMag USA is a participant. They submit that the TAC adequately alleges that defendants agreed to fix prices for MIO, that they did in fact fix prices, and that the price-fixing restrained competition, which injured eMag USA.

eMag USA also asserts that to the extent that the court might require an additional jurisdictional component, the TAC does allege facts showing that the foreign conspiracy had a substantial impact on United States commerce.[5] Pointing to Metro Industries, eMag USA notes that some courts have concluded that the jurisdictional requirement that foreign conspiracies must have a substantial impact on U.S. commerce is an additional element of a plaintiff's substantive antitrust claim. See Metro Indus., 82 F.3d at 847-49.[6] eMag USA

---

[5] Defendants do not raise this issue in their moving papers. In its opposition, eMag USA asserts that some circuits have applied this "jurisdictional rule" only to conduct that is wholly foreign, and others only to conduct that is at least primarily foreign, but claims that the Ninth Circuit has not made clear whether the jurisdictional requirement of a substantial impact on U.S. commerce applies only to conduct that is wholly foreign or also to conduct that is primarily foreign.

[6] The court does not concur with eMag USA's interpretation of the cited section of the opinion in Metro Industries, 82 F.3d at 847-49. The requirement that an antitrust plaintiff show injury to competition in the United States is part of the "rule of reason" analysis. It is not a "jurisdictional rule" or an "additional element" of a case where the Sherman Act claim is based on foreign conduct. The Metro Industries court did discuss in an earlier section, see 82 F.3d at 845-47, the rule that jurisdictional inquiries are required when a Sherman Act claim is based on foreign conduct – i.e., to determine whether the alleged restraint affected the foreign commerce of the United States. But that is not the same as the additional element required to state a claim for a "rule of reason" case. Moreover, although eMag USA discusses this "additional jurisdictional element" at length, the court does not find it to be a necessary allegation in this case, as a) the court previously disposed of the claims relating to foreign commerce, b) the price-fixing at issue here relates to the price charged for MIO to a U.S. company (eMag USA) in the United States; and c) the jurisdictional issues are controlled by the Supreme Court's interpretation of the FTAIA (see July 20, 2005, Order Granting Motion to Dismiss). Allegations that an antitrust case involves only foreign conduct raises a jurisdictional issue. See 15 U.S.C.A. § 6a; Hoffman-LaRoche Ltd. v. Empagran, Inc., 542 U.S. 155 (2004). This jurisdictional requirement focuses on whether there is sufficient effect on the commerce

argues that while some courts have applied this requirement in cases where the conduct is wholly foreign, and others have applied it in cases where the conduct is either wholly or primarily foreign, the Ninth Circuit has not indicated a choice among those two (citing id. at 845-46, where court simply characterized conduct as "foreign").

Nevertheless, eMag USA contends that this distinction is irrelevant here, as the claims remaining in the case target conduct that is neither wholly nor primarily foreign, as the conspiracy at issue involves five U.S. corporations that sold millions of dollars of MIO to U.S. purchasers as U.S. imports and in purely U.S. commerce, including ISKM, whose president has pleaded guilty to price-fixing. Alternatively, eMag USA asserts that even if the rule does apply, the TAC does allege facts showing that the conduct at issue had a substantial effect on the U.S., referring to allegations in the TAC that the defendants' conspiracy was intended to involve, and did involve, millions of dollars of MIO manufactured, sold, and delivered in the U.S. to U.S. purchasers in purely domestic U.S. commerce, as well as millions of dollars of MIO sold to U.S. purchasers as U.S. imports.

eMag USA argues that no court has ever held that a price-fixing conspiracy involving an American corporation that manufactures and sells goods in the United States (such as ISKM) is exempt from per se condemnation for price-fixing simply because it colluded with foreign companies, held meetings abroad, or both. eMag USA asserts that courts generally have applied the ordinary standards under U.S. antitrust law to foreign conduct that is subject to United States jurisdiction. In addition, eMag USA contends that questions such as whether the conduct alleged in the TAC is primarily or wholly foreign, and whether the conduct had a substantial impact on U.S. commerce, are factual questions that should not be resolved on a motion to dismiss.

The court finds that the motion must be DENIED. Defendants argue for the application of the "rule of reason" standard based on a questionable interpretation of the

---

of the United States to support application of U.S. law, whereas the requirement that the plaintiff allege injury or anticompetitive effect focuses on whether the plaintiff can state a claim under the Sherman Act.

9

language from Metro Industries that application of the pro se rule is not appropriate where "the conduct in question" occurred in another country. They suggest that the "foreign" agreement to fix prices is the "conduct in question," but they overlook the allegation that the actual sales of MIO at artificially inflated prices were made to eMag USA in the United States, pursuant to a conspiracy to fix prices "throughout the world." The court finds that the TAC adequately pleads facts supporting the elements of a claim of horizontal price-fixing, a per se violation.

Defendants do not dispute that eMag has stated a claim of a per se violation of the Sherman Act. The question is whether the fact that the conspiracy was "foreign" is sufficient to require application of the "rule of reason" analysis. If the "rule of reason" analysis applies, then eMag USA must plead additional elements in order to state a claim under § 1 of the Sherman Act. Metro Industries, the case on which defendants primarily rely, simply states that a per se analysis is not appropriate where "the conduct in question occurred in another country." However, Metro Industries does not support defendants' position with regard to the claims asserted by eMag in this case.[7]

In Metro Industries, the plaintiff Metro started a stainless steel kitchenware business, importing mixing bowls from a Korean supplier. About a year later, Metro began purchasing bowls from Sammi Corp. ("Sammi"), a large Korean trading company that purchased a wide variety of products, including stainless steel steamers, for import to the U.S. and other countries.

---

[7] Defendants rely on the statement in the January 10, 2005, order, where the court dismissed the SAC "because plaintiffs do not allege facts showing that the agreements actually caused injury to competition" and "do [not] assert facts showing the impact on themselves, individually, or within the field of commerce in which they are engaged," and cited Les Shockley Racing in support. Jan. 10, 2005, Order at 8. While it is true that courts presumptively apply "the rule of reason" analysis in Sherman Act § 1 cases, the statement in the January 10 order should not be viewed as a ruling that the case must be subjected to a "rule of reason" analysis (although Les Schockley is a "rule of reason" case). The question whether it was a per se or a "rule of reason" case was not briefed by the parties and did not arise at all in connection with the defendants' motions. Moreover, the second amended complaint was so "deficient in pleading the facts purporting to state a claim for violation of the Sherman Act" that it was "impossible to ascertain which claims [were] being asserted, or by or against whom." Jan. 10, 2005, Order at 5.

10

Sammi was a member of the Korea Holloware Association, which, through a design registration committee, granted patterns and design registration rights based on the shape, color, and appearance of the products. A trading company such as Sammi could hold the right to a pattern design only jointly with a manufacturer. Registration gave the design holder the exclusive right to export a particular design for three years. Metro claimed that it originally raised the idea of a line of stainless steel steamers with Sammi and provided Sammi with models, and asked Sammi to develop samples. Sammi then registered the steamer design, and began to supply Metro with steamers. After a couple of years, there the flow of steamer deliveries from Sammi to Metro was interrupted. Metro claimed that its attempts to order the steamers from another company were blocked by Sammi, although Metro was eventually able to secure a supply of steamers from another Korean company.

Metro then filed suit against Sammi and its two American subsidiaries, alleging violations of the Sherman Antitrust Act, among other claims. Metro alleged that the design registration system, which gave Korean holloware producers the exclusive right to export a particular hollowear design for three years, constituted a market division that was a per se violation of § 1 of the Sherman Act. Metro claimed that Sammi had used this registration system to prevent Metro and other kitchenware importers from acquiring Korean-made stainless steel steamers from any of Sammi's competitors in Korea.

The Ninth Circuit held that per se treatment was not appropriate for several reasons. First, the court concluded that the Korean registration system was not a classic horizontal market division agreement in which competitors at the same level agreed to divide up the market for a given product. The court found no instances in which an arrangement similar to the Korean manufacturer-exporter design registration system had undergone judicial scrutiny in the Sherman Act context, and found that "the novelty of this arrangement" strongly supported application of the "rule of reason" analysis. Metro Indus., 82 F.3d at 844. Second, the court found no evidence of a negative effect on competition, and concluded instead that the evidence showed that the limited protection created by the registration system could encourage manufacturers to develop and produce new products,

11

knowing that they would have the exclusive right to export a particular design for a limited period of time.  Id.  Third, the court found no evidence that the purpose of the design registration system was to restrain trade, which it concluded also counseled in favor of "rule of reason" analysis.  Id.  Based on these three considerations, the court determined that "rule of reason" analysis was appropriate in the case.

The court then commented that even if Metro could prove that the registration system constituted a "market division" that would require application of the per se rule if the market diversion occurred in a domestic context, the application of the per se rule would not be appropriate because "the conduct in question occurred in another country."  Id. at 844-45.  The court noted that determining whether the registration system was a violation of the antitrust laws would still require an examination of the impact of the system on commerce in the United States, as "[i]t is well established by now that the Sherman Act applies to foreign conduct that was meant to produce and did in fact produce some substantial effect in the United States."  Id. at 845 (quoting Hartford Fire Ins. Co. v. Calif., 509 U.S. 764, 796 (1993)).  The court concluded that the potential illegality of actions occurring outside the U.S. requires an inquiry into the impact on commerce in the United States, and that in such a situation, the court must apply a "rule of reason" analysis to determine whether there is a Sherman Act violation.  Id.

In the present case, eMag USA is an American corporation that allegedly purchased MIO that was manufactured in the U.S. and sold in the U.S. by ISKM, and MIO that was manufactured in Japan and imported into and sold in the U.S. by Toda Kokyo USA and Sakai New York.  Plaintiff has alleged a straight horizontal price-fixing conspiracy, in which ISKM, Toda Kogyo USA, and Sakai New York were co-conspirators with the other non-U.S. defendants.  The TAC alleges all the elements required to state a claim for a per se violation of § 1 of the Sherman Act – that the defendants entered into a conspiracy; that the defendants' agreement unreasonably restrained trade because it was an agreement among competitors to fix and artificially inflate the prices that American purchasers paid for MIO that defendants imported into the United States and which defendants manufactured in the

12

United States; and that the restraint affected interstate commerce.

The TAC also alleges antitrust standing – that eMag USA and the class of U.S. purchasers it seeks to represent bought millions of dollars' worth of MIO from defendants in the United States at prices that were artificially inflated as a result of the illegal price-fixing conspiracy. In other words, the TAC alleges that eMag USA suffered the alleged injury "in the market where the competition [was] restrained." See American Ad Mgmt., Inc. v. Gen'l Tel. Co. of Calif., 190 F.3d 1051, 1057 (9th Cir. 1999).

In Metro Industries, by contrast, the plaintiff purchased kitchenware from a Korean company, and the prices were predetermined by a Korean design registration system that the court found not to be a classic horizontal market division agreement. As eMag USA notes in its opposition, because the court in Metro Industries found that the case was not appropriate for application of the per se rule because the Korean registration system was not a classic horizontal market division agreement, the subsequent comment that application of the per se rule would not be appropriate because "the conduct in question occurred in another country" is simply dicta. Metro Industries does not hold that a case that alleges a per se violation of § 1 of the Sherman Act, but which also involves some "foreign conduct" – e.g., an agreement involving both foreign and U.S. conspirators, which was hatched in a foreign country, but which was carried out at least partly in the United States – requires application of the "rule of reason" analysis. The foreign conduct described in Metro Industries was the product of the Korean design registration system – it was not a conspiracy entered into by both Korean and American co-conspirators.

**CONCLUSION**

In accordance with the foregoing, the court hereby DENIES the motion to dismiss.

**IT IS SO ORDERED.**

Dated: April 12, 2006

_____
PHYLLIS J. HAMILTON
United States District Judge

13